UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

TOMASA TINO REYNOSO DE LUIS,      )
                                  )
            Petitioner,           )
                                  )
      v.                          )      Case No. 2:25-cv-921
                                  )
DONALD J. TRUMP, IN HIS           )
OFFICIAL CAPACITY AS PRESIDENT    )
OF THE UNITED STATES; PATRICIA    )
HYDE, IN HER OFFICIAL CAPACITY    )
AS ACTING BOSTON FIELD OFFICE     )
DIRECTOR, IMMIGRATION AND         )
REMOVAL OPERATIONS; DAVID W.      )
JOHNSTON, DIRECTOR OF THE         )
VERMONT SUB-OFFICE OF THE         )
BOSTON FIELD OFFICE FOR U.S.      )
IMMIGRATION AND CUSTOMS           )
ENFORCEMENT; TODD M. LYONS, IN    )
HIS OFFICIAL CAPACITY AS          )
ACTING DIRECTOR, U.S.             )
IMMIGRATION AND CUSTOMS           )
ENFORCEMENT; PETE R. FLORES,      )
IN HIS OFFICIAL CAPACITY AS       )
ACTING COMMISSIONER FOR U.S.      )
CUSTOMS AND BORDER                )
PROTECTIONS; KRISTI NOEM, IN      )
HER OFFICIAL CAPACITY AS          )
SECRETARY OF THE UNITED STATES    )
DEPARTMENT OF HOMELAND            )
SECURITY; MARCO RUBIO, IN HIS     )
OFFICIAL CAPACITY AS SECRETARY    )
OF STATE; PAMELA BONDI, IN HER    )
OFFICIAL CAPACITY AS U.S.         )
ATTORNEY GENERAL; JONATHAN        )
TUREK, SUPERINTENDENT,            )
CHITTENDEN REGIONAL               )
CORRECTIONAL FACILITY,            )
                                  )
            Respondents.          )

## OPINION AND ORDER

Before the Court is Petitioner Tomasa Tino Reynoso De Luis' petition for a writ of habeas corpus under 28 U.S.C. § 2241. ECF Nos. 1, 6. Respondents contend that Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2), and that her petition lacks merit and should be denied. ECF No. 9. This Court held a status conference on December 22, 2025, and the parties then submitted additional briefing. ECF Nos. 9, 10. The parties agree that the legal issue presented by the petition is the same as that presented in *Piedrahita-Sanchez v. Turek et al*, No. 2:25-cv-875, in which this Court issued an Opinion and Order on November 14, 2025. *See generally* Opinion and Order, *Piedrahita-Sanchez v. Turek et al*, No. 2:25-cv-875, (D. Vt. Nov. 14, 2025), ECF No. 13; *see also* ECF No. 9 at 2 ("While reserving all rights, including the right to appeal, Federal Respondents submit this abbreviated response in lieu of a formal responsive memorandum to preserve the legal issues and to conserve judicial and party resources in light of this Court's prior decision in *Piedrahita-Sanchez v. Turek et al.*, No. 2:25-cv-875-wks, ECF No. 13.").

For the reasons set forth below, the Court GRANTS in part Petitioner's habeas petition.

2

## I.    <u>Factual Background</u>

Petitioner was born in Guatemala, and states in her petition that she was "forced to flee in 2015 after repeated physical and sexual assaults, and the deaths of her children." *Id.* at 2.  She entered the United States on or around December of 2015, and has resided in the United States since then.  ECF No. 1 at 1-2.  When Petitioner first entered the United States, she was encountered by Customs and Border Protection officials, who found her to be inadmissible and served her with an Order of Expedited Removal.  *See* ECF No. 9-1 (Form I-860, Notice and Order of Expedited Removal); ECF No. 9-2 (Form I-867A & B, Record of Sworn Statement in Proceedings).  "Petitioner was subsequently released."  ECF No. 9 at 2.[1]

Petitioner filed an I-589 Application for Asylum and Withholding of Removal.  *Id.* at 7.  She received an Employment Authorization Document as a result of her pending asylum application.  *Id.*  Her application was dismissed because USCIS stated that it lacked jurisdiction to consider it while she was in expedited removal proceedings.  ECF No. 9-3.

Petitioner resides in Providence, Rhode Island.  ECF No. 1 at 3.  She is a mother to two children and a grandmother to two U.S. citizens.  ECF No 10 at 2.  She has no criminal record.

---

[1] Respondents do not explain how or why Petitioner was released.

*Id.* at 3.  Petitioner has attended all ICE check-ins over the last decade since her release.  ECF No. 1 at 7.

On December 2, 2025, Petitioner attended an ICE check-in and was detained.  *Id.*  Respondents assert that Petitioner was detained by ICE pursuant to 8 U.S.C. § 1225(b)(1) "in light of her earlier Notice and Order of Expedited Removal."  ECF No. 9 at 3.  Petitioner is currently detained in Vermont at the Chittenden Regional Correctional Facility.  ECF No. 1 at 5.

Petitioner filed a Petition for Writ of Habeas Corpus in this Court on December 17, 2025, asserting five counts: a violation of Petitioner's Fifth Amendment right to due process (unlawful punishment and freedom from cruel treatment and conditions of confinement); a violation of 8 U.S.C. § 1226(a) and associated regulations; a violation of Petitioner's Fifth Amendment right to due process (failure to provide a bond hearing); a violation of Petitioner's Fifth Amendment right to due process (failure to provide an individualized hearing for domestic civil detention); and a violation of Petitioner's Fifth Amendment right to due process (substantive due process). ECF No. 1. That same day, this Court issued a Temporary Restraining Order and Order to Show Cause which, among other things, ordered that "Petitioner shall not be removed from the District of Vermont pending further order of this court."  ECF No. 3 at 2. The Court held a status conference on December 22, 2025.  The

Court set an expedited briefing schedule, with Respondents'
response to the petition due by the end of the day (December 22,
2025), and Petitioner's reply due on December 24, 2025.

According to Respondents: "Later on December 22, 2025,
notwithstanding Petitioner's expedited removal order, ICE served
on Petitioner a Notice to Appear ("NTA") and placed her in full
removal proceedings." ECF No. 9 at 3; *see also* ECF No. 9-4
(Notice to Appear).

The Government now maintains that Petitioner is subject to
mandatory detention under 8 U.S.C. § 1225(b)(2). ECF No. 9 at
1-2. Briefing submitted by both parties after the December 22,
2025 status hearing demonstrates that the parties agree that the
legal issues raised in this case are governed by the same
analysis as that applied by this Court in *Piedrahita-Sanchez v.
Turek et al.*, though the Respondents have noted their
"respectful[] disagree[ment]" with that decision. ECF No. 9 at
2.

## II.  Jurisdiction and Legal Standard

District courts have jurisdiction under 28 U.S.C. § 2241 to
hear claims that an immigration detainee is "in custody in
violation of the Constitution or laws or treaties of the United
States." 28 U.S.C. § 2241(c)(3); *see also Zadvydas v. Davis*, 533
U.S. 678, 687 (2001). Petitioners have the burden to
demonstrate that their detention violates the Constitution or

federal law. *See, e.g.*, 28 U.S.C. § 2241(c)(3); *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011).[2]

### III. Discussion

Petitioner requests "release, a federal bond hearing, or, in the alternative, a bond hearing in immigration court under 1226(a)."  ECF No. 1 at 9.  The Government contends that Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2), and that her petition lacks merit and should be denied.[3]  As stated above, the parties agree that the issues raised with regard to Section 1225 are similar to those this Court decided in *Piedrahita-Sanchez v. Turek et al*, No. 2:25-cv-875, (D. Vt. Nov. 14, 2025), ECF No. 13.  The Government reserved its right to disagree with the Court's holding in *Piedrahita-Sanchez,* and stated that it is reserving its right to appeal.  ECF No. 9 at 2 ("While respectfully disagreeing with

---

[2] In this case, Respondents do not argue that Petitioner failed to exhaust his administrative remedies.  Other district courts have addressed, and excused, exhaustion in similar circumstances.  *See, e.g., Lopez Benitez v. Francis et al.*, No. 1:25-CV-05937-DEH, 2025 U.S. Dist. LEXIS 157214, 2025 WL 2371588, *37-41 (S.D.N.Y. Aug. 13, 2025).

[3] As explained above, the Government states that Petitioner was originally detained under § 1225(b)(1) but argues that Petitioner is currently detained under § 1225(b)(2).  Both because the issue was not briefed by the Government, and because serious questions remain as to how Petitioner could have been in expedited removal proceedings for a decade without any detention, the Court addresses only the arguments briefed—*i.e.*, that Petitioner is being detained under § 1225(b)(2).

the Court's prior decision, Federal Respondents acknowledge
that, should the Court adhere to its reasoning in that decision,
the Court would likely reach the same outcome in this case.
Thus, in the interest of judicial economy, and to expedite the
Court's consideration of this matter, Federal Respondents hereby
rely upon and incorporate by reference the legal arguments they
presented in *Piedrahita-Sanchez* and submit that the Court can
decide this matter without further briefing and oral
argument.").

Accordingly, the Court adopts the same analysis in this
case as in that case, reproduced below.

**A. Basis for Detention**

As is relevant here, two statutes principally govern the
detention of noncitizens who do not have an order of removal:[4]
8 U.S.C. §§ 1225 and 1226. Section 1225 provides for inspection
of "[a]ll aliens . . . who are applicants for admission or
otherwise seeking admission or readmission to or transit through
the United States[,]" 8 U.S.C. § 1225(a)(3), where an "applicant
for admission" is defined as "[a]n alien present in the United
States who has not been admitted or who arrives in the United

---

[4] Again, the Court adopts the same reasoning as it has in recent
cases, because the Government has not briefed any new issues and
is presently only arguing detention pursuant to § 1225(b)(2)(A).
Petitioner addressed both 8 U.S.C. § 1225(b)(1) and (b)(2)(A),
arguing that her detention should instead be analyzed under
8 U.S.C. § 1226(a).

States (whether or not at a designated port of arrival and
including an alien who is brought to the United States after
having been interdicted in international or United States
Waters)." *Id.* § 1225(a)(1). Subject to certain exclusions the
parties do not argue are applicable here, detention is mandatory
under Section 1225:

> In the case of an alien who is an applicant for
> admission, if the examining immigration officer
> determines that an alien seeking admission is not
> clearly and beyond a doubt entitled to be admitted,
> the alien shall be detained for a proceeding under
> section 1229a of this title.

*Id.* § 1225(b)(2)(A).

Section 1226(c) governs the detention of noncitizens
apprehended within the United States on criminal grounds.
Section 1226(a) is a catchall provision that governs the
detention of any other noncitizen apprehended by immigration
enforcement and is generally understood to apply to noncitizens
"already present in the United States." *Jennings v. Rodriguez*,
583 U.S. 281, 303 (2018).[5] Section 1226(a) creates a statutory

---

[5] The Court notes that the Government has argued that *Jennings*
supports its interpretation of Sections 1225 and 1226, because
it states that 1226 applies to "certain aliens already in the
country[,]" and the word "certain" means that it is not the
exclusive source of detention authority for certain aliens who
are already in the country. Rather, the Court considers the
*Jennings* opinion to lend support to Petitioner's reading of the
statutes: at most, the opinion is ambiguous. *See Jennings*, 583
U.S. at 288 ("Even once inside the United States, aliens do not
have an absolute right to remain here. For example, an alien
present in the country may still be removed if he or she falls

8

2:25-cv-00921-wks    Document 11    Filed 12/30/25    Page 9 of 23

right to a bond hearing before an immigration judge, but
§ 1225(b) and § 1226(c) call for mandatory detention.  *Id.* at
302, 305-06.

This July, the Department of Homeland Security ("DHS")
adopted a new interpretation of Section 1225 of the Immigration
and Nationality Act (INA), one that Respondents advance in this
case.  *See Martinez v. Hyde*, No. 25-11613-BEM, 2025 U.S. Dist.
LEXIS 141724, 2025 WL 2084238, at *12 (D. Mass. July 24, 2025)
(describing "novel interpretation").  In September, the BIA
issued a case called *Matter of Yajure Hurtado*, 29 I&N Dec. 216
(BIA 2025), which held that all noncitizens who enter the United
States without inspection are "applicants for admission" who are
"seeking admission" within the meaning of § 1225(b), no matter
how long they have lived in the United States.

In this case, Petitioner has been detained pursuant to
8 U.S.C. § 1225(b)(2).  It is the Government's position that,
notwithstanding her roughly 10-year presence in this country,
Petitioner remains an "applicant for admission" who is "seeking
admission" and is subject to detention under Section 1225(b)(2).
As an initial matter, the Court notes that other district courts

---

'within one of more…classes of deportable aliens.' § 1227(a).
That includes aliens who were inadmissible at the time of entry
or who have been convicted of certain criminal offenses since
admission.  *See* §§ 1227(a)(1), (2).  Section 1226 generally
governs the process of arresting and detaining that group of
aliens pending their removal.").

in this Circuit have consistently rejected the Government's proposed, broad interpretation of § 1225(b)(2)(A). *See, e.g., Benitez v. Francis,* No. 25-cv-5937 (DEH), 2025 U.S. Dist. LEXIS 157214, 2025 WL 2371588, at *25 (S.D.N.Y. Aug. 13, 2025); *Samb v. Joyce,* No. 25-cv-6373, 2025 U.S. Dist. LEXIS 161109, 2025 WL 2398831, at *3 (S.D.N.Y. Aug. 19, 2025); *Gonzalez v. Joyce,* No. 25-cv-8250, 2025 U.S. Dist. LEXIS 208578, 2025 WL 2961626, at *4 (S.D.N.Y. Oct. 19, 2025); *Hyppolite v. Noem,* No. 25-cv-4304, 2025 U.S. Dist. LEXIS 197628, 2025 WL 2829511, at *8-12 (E.D.N.Y. Oct. 6, 2025); *J.U. v. Maldonado,* No. 25-cv-04836 (OEM), 2025 U.S. Dist. LEXIS 191630, 2025 WL 2772765, at *5-9 (E.D.N.Y. Sept. 29, 2025); *Perez v. Francis*, No. 25-cv-8112 (JGK), 2025 U.S. Dist. LEXIS 219356, at *5-7 (S.D.N.Y. Nov. 6, 2025); *Ortiz v. Freden*, No. 25-cv-960-LJV, __ F. Supp. 3d__, 2025 U.S. Dist. LEXIS 217654, 2025 WL 3085032, at *36-37 (W.D.N.Y. Nov. 4, 2025). Moreover, the vast majority of cases across the country have held similarly, with a few exceptions that the Government has cited.[6]

---

[6] The Court has read and considered *Chavez v. Noem*, No. 25-cv-2325, 2025 WL 2730228 (S.D. Cal. Sept. 24, 2025); *Vargas Lopez v. Trump,* 2025 U.S. Dist. LEXIS 192557, 2025 WL 2780351 (D. Neb. Sept. 30, 2025); *Oliveira v. Patterson*, No. 6:25-cv-01463, 2025 U.S. Dist. LEXIS 218128 (W.D. La. Nov. 4, 2025); and *Pena v. Hyde*, No. 25-cv-11983, 2025 WL 2108913 (D. Mass. July 28, 2025) and does not find them persuasive in this context.

The Court begins its analysis with the statutory text and plain meaning. *See United States v. Rowland*, 826 F.3d 100, 108 (2d Cir. 2016). First, the title of Section 1225 is: "Inspection by immigration officers; expedited removal of inadmissible *arriving* aliens; referral for hearing." 8 U.S.C. § 1225 (emphasis added). The word "arriving" in the title indicates that it does not refer to noncitizens present already. *See Pizarro Reyes*, No. 25-cv-12546, 2025 U.S. Dist. LEXIS 175767, 2025 WL 2609425, at *5 (E.D. Mich. Sept. 9, 2025) ("the use of 'arriving' to describe noncitizens strongly indicates that the statute governs the *entrance* of noncitizens to the United States. This reading is bolstered by the fact that 1225 clearly establishes an inspection scheme for when to let noncitizens into the country.").

Section 1225(b)(2) provides that "in the case of an alien who is *an applicant for admission*, if the examining immigration officer determines that *an alien seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A). Under section 1225(a)(1), an "applicant for admission" is defined as "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United

11

States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission." *See also Ascencio-Rodriguez v. Holder*, 595 F.3d 105, 108 n.3 (2d Cir. 2010) ("Aliens not admitted are treated as 'applicants for admission.'" (citing 8 U.S.C. § 1225(A)(1)). Elsewhere, the INA defines "admission" and "admitted" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A).

As for the meaning of "seeking admission," this Court finds that the likely meaning is those noncitizens presenting themselves at the border, or who were recently apprehended just after entering.[7] However, to the extent the statute may be

---

[7] As the district court in *Benitez v. Francis* analogized:

> This understanding accords with the plain, ordinary meaning of the words "seeking" and "admission." For example, someone who enters a movie theater without purchasing a ticket and then proceeds to sit through the first few minutes of a film would not ordinarily then be described as "seeking admission" to the theater. Rather, that person would be described as already present there. Even if that person, after being detected, offered to pay for a ticket, one would not ordinarily describe them as "seeking admission" (or "seeking" "lawful entry") at that point—one would say that they had entered unlawfully but now seek a lawful means of remaining there. As § 1225(b)(2)(A) applies only to those noncitizens who are actively "seeking admission" to the United States, it cannot, according to its ordinary meaning, apply to Mr. Lopez Benitez, because he has already been residing in the United States for several years.

considered ambiguous as to whether it means either seeking the
legal right to enter (Respondents) or the act of entering the
country at the border or otherwise (Petitioner), the Court turns
to the canons of statutory construction.  Once again, this Court
agrees with many other courts that: if all "applicant[s] for
admission" also are "seeking admission," then the words "seeking
admission" would be surplusage.  *Ortiz v. Freden*, No. 25-cv-960-
LJV, __ F.Supp.3d__, 2025 U.S. Dist. LEXIS 217654, 2025 WL
3085032, at *15-16 (W.D.N.Y. Nov. 4, 2025) ("After all, Congress
simply could have said 'if the examining immigration officer
determines that *an applicant for admission* is not clearly and
beyond a doubt entitled to be admitted, the alien shall be
detained.'" (emphasis in original)).

This Court also agrees with other district courts who have
observed that this reading is supported by the other
subparagraphs in Section 1225(b)(2).  Subparagraph (B) provides
that Section 1225(b)(2)(A) "shall not apply to an alien…who is a
crewman" or "who is a stowaway" and subparagraph C specifies a
return procedure in the case of an alien described in
subparagraph (A) who is "arriving on land." 8 U.S.C. § 1225(B),
(C).  The carve-outs for various means of initial arrivals into

---

*Lopez Benitez v. Francis*, No. 25-cv-5937, 2025 U.S. Dist. LEXIS
157214, 2025 WL 2371588, at *21 (S.D.N.Y. Aug. 13, 2025).

the United States suggests that those covered by Section 1225(b)(2) who are "seeking admission" refer to those individuals presenting themselves at the border (or those who have not yet effected entry, such as the noncitizen who succeeded in making it 25 yards into U.S. territory in *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020)).

Similarly—and, again, following the analysis of other courts—the Court observes that the Respondents' interpretation of Section 1225(b)(2) would render the 2025 Laken Riley Act— which amended 8 U.S.C. § 1226(c)—without meaning. *See, e.g., Ortiz v. Freden*, No. 25-cv-960-LJV, __ F.Supp.3d__, 2025 U.S. Dist. LEXIS 217654, 2025 WL 3085032, at *17-18 (W.D.N.Y. Nov. 4, 2025). It is unlikely that Congress passed the Laken Riley Act to add Subsection (c)(1)(E) to the mandatory detention scheme under Section 1226(c) if those individuals were already covered by mandatory detention under Section 1225(b)(2).

In support of its position, the Government points to the legislative history of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, which streamlined the distinct deportation and exclusion proceedings into "removal proceeding." Respondents argue that Congress sought to discard the former regime and eradicate detention discrepancies. However, this Court shares the skepticism of other district courts faced with the argument that Congress was seeking to

14

completely overhaul the systems of detention as well. *See*
*Aceros v. Kaiser*, No. 25-cv-06924-EMC, 2025 U.S. Dist. LEXIS
179594, 2025 WL 2637503, at *30-32 (N.D. Cal. Sept. 12, 2025);
*see also Zumba v. Bondi*, No. 25-cv-14626 (KSH), 2025 U.S. Dist.
LEXIS 190052, 2025 WL 2753496, *30 n.5 (D.N.J. Sept. 26, 2025)
("The Court need not consider the legislative history because it
finds the statute is clear and simply notes that Congress'
stated goal was to put certain noncitizens seeking entry on more
equal footing with noncitizens who were present in the United
States with respect to their removal proceedings. The cited
legislative history does not suggest that Congress also intended
to subject all noncitizens who entered the United States without
inspection to mandatory detention during their removal
proceedings." (emphasis in original)); *see also Romero v. Hyde*,
No. 25-11631-BEM, __ F. Supp. 3d__, 2025 U.S. Dist. LEXIS
160622, 2025 WL 2403827, at *29 (D. Mass. Aug. 19,
2025)(Congressional intent was not expressed as to *detention*
pending the outcome of the immigration proceedings, and
"[r]ealistically speaking, if Congress's intention was so clear,
why did it take thirty years to notice?").

**B. Constitutional Deprivation**

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), sets out a
three-part test that the Second Circuit has applied when
determining the adequacy of process in the context of civil

15

immigration confinement. *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020). Under *Mathews*, the three factors are: "[f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

On the first prong, Petitioner's private interest in "freedom from imprisonment" is strong. *See Velasco Lopez*, 978 F.3d at 851 ("the most significant liberty interest there is—the interest in being free from imprisonment." (citing *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)). Petitioner "was detained without any pre-detention, individualized determination as to whether [s]he posed a flight risk or any risk of dangerousness" nor is there any indication that "there was any material change in circumstances that triggered [Petitioner's] sudden arrest and detention"; rather, "it appears [Petitioner] was detained simply because" she was readily identified by Respondents as a noncitizen engaged in the process of ICE check-ins. *Hyppolite v. Noem,* No. 25-cv-4304, 2025 U.S. Dist. LEXIS 197628, 2025 WL 2829511, at *34-35 (E.D.N.Y. Oct. 6, 2025) (similar case in

16

which the petitioner was detained when he appeared for a
previously calendared conference in immigration court).

On the second prong, the Court weighs the risk as high
because "[t]he purpose of the bond hearing employed when the
government seeks to exercise its discretion in detaining a
noncitizen under § 1226(a) is to provide procedures which will
better ensure that people who are, in fact, a risk of flight or
a danger to the community are the people [who] are ultimately
detained." *Id.* Here, there were no procedural safeguards in
the form of a bond hearing, and there are no planned procedural
safeguards.[8] *Zumba v. Bondi*, No. 25-cv-14626 (KSH), 2025 U.S.
Dist. LEXIS 190052, 2025 WL 2753496, *29-30 (D.N.J. Sept. 26,
2025) ("the first and second *Mathews* factors weight heavily in
petitioner's favor, as she has been deprived of her liberty,
erroneously subjected to mandatory detention under § 1225 during
her removal proceedings, and denied due process protections,
including the right to seek bond."). As there has been no bond
hearing, apparently no one has assessed Petitioner's risk of
flight and dangerousness. The lack of procedure contributes to

---

[8] The Government has observed that the detention under Section
1225 is not indefinite: the Petitioner could be granted
temporary parole under §§ 1225(b)(1) or (b)(2) for "urgent
humanitarian reasons or significant public benefit" or the
Petitioner's detention could end once removal proceedings have
concluded. Regardless, erroneous deprivation in the meantime
will have no procedural protections.

an increased risk of erroneous deprivation. *See, e.g., Black v. Decker*, 103 F.4th 133, 152, (2d Cir. 2024) *reh'g en banc denied,* 2025 U.S. App. LEXIS 27912, 2025 WL 2989687 (2d Cir. Oct. 24, 2025) (in considering the category of people subject to mandatory detention under the former version of Section 1226(c), the Second Circuit held that "the almost nonexistent procedural protections in place for section 1226(c)" contribute to a "markedly increased…risk of an erroneous deprivation of [p]etitioners' private liberty interest" where the only procedural protection available was a hearing to contest whether the petitioners in fact committed a crime that makes them subject to mandatory detention under that statute).

On the third prong, on the record currently before the Court, the Government does not have a significant interest in Petitioner's continued detention.  It is not authorized by 8 U.S.C. § 1225 and it serves no legitimate purpose.  *See Lopez Benitez v. Francis et al.*, No. 1:25-CV-05937-DEH, 2025 U.S. Dist. LEXIS 157214, 2025 WL 2371588, *36 (S.D.N.Y. Aug. 13, 2025) ("The Attorney General's discretion to detain individuals under 8 U.S.C. § 1226(a) is valid where it advances a legitimate governmental purpose such as ensuring the appearance of aliens at future immigration proceedings and preventing danger to the community." (cleaned up)).  On the other hand, the Court recognizes that there is a governmental interest in ensuring

persons "do not commit crimes or evade law enforcement"—as such, a bond hearing will "permit the Immigration Court to consider those interests while also safeguarding Petitioner's significant private interests in personal liberty and due process." *Adonay E.M. v. Noem*, No. 25-cv-3975, 2025 U.S. Dist. LEXIS 222247 at *26 (D. Minn. Nov. 12, 2025).

Accordingly, the Court finds that Petitioners' due process rights were violated, and the habeas petition must be granted. *See Gonzalez v. Joyce,* No. 25-cv-8250, 2025 U.S. Dist. LEXIS 208578, 2025 WL 2961626, at *4 (S.D.N.Y. Oct. 19, 2025) ("Because Respondents' ongoing detention of [Petitioner] with no process at all, much less prior notice, no showing of changes circumstances, or an opportunity to respond, violates his due process rights,[] the Petition must be granted." (internal quotation marks and citation omitted)).

## IV.    <u>Remedy</u>

Generally, writs of habeas corpus are used to request release from custody. *Wilkinson v. Dotson*, 544 U.S. 74, 78 (2005). A habeas court has "the power to order the conditional release of an individual unlawfully detained—though release need not be the exclusive remedy and is not the appropriate one in every case in which the writ is granted." *Boumediene v. Bush*, 553 U.S. 723, 779-80 (2008) (noting that at "common-law habeas corpus was, above all, an adaptable remedy."). When faced with

19

similar habeas petitions, some courts in this Circuit and
outside have ordered a bond hearing or, alternatively, immediate
release. *See, e.g., Perez v. Francis*, No. 25-cv-8112 (JGK),
2025 U.S. Dist. LEXIS 219356, at *5-7 (S.D.N.Y. Nov. 6, 2025)
("The Government shall ensure that the petitioner receives a
bond hearing before an Immigration Judge pursuant to 8 U.S.C.
§ 1226(a) within seven (7) days of this Memorandum Opinion and
Order; if no hearing is held by that deadline, the Government
shall immediately release the petitioner."); *Ortiz v. Freden*,
No. 25-cv-960-LJV, __ F.Supp.3d __, 2025 U.S. Dist. LEXIS 217654,
2025 WL 3085032, at *36-37 (W.D.N.Y. Nov. 4, 2025) ("[T]he
[c]ourt ORDERS the respondents to provide Alvarez Ortiz with an
individualized bond hearing before an immigration judge **within
seven calendar days of the date of this decision and order** at
which the government shall bear the burden to demonstrate, by
clear and convincing evidence, that he is a danger to the
community or a flight risk. . . . If the respondents fail to
provide such a hearing within seven calendar days, they shall
immediately release Alvarez Ortiz.").  Some other district
courts have simply ordered immediate release. *See, e.g.,
Hyppolite v. Noem,* No. 25-cv-4304, 2025 U.S. Dist. LEXIS 197628,
2025 WL 2829511, at *44 (E.D.N.Y. Oct. 6, 2025) ("Hyppolite's
Amended Petition for a writ of habeas corpus under 28 U.S.C.
§ 2241 is GRANTED.  At the hearing on September 29, 2025, the

Court ordered Respondents to immediately release Hyppolite from custody, and was later informed by Respondents' counsel that he was released that same day."); *Gonzalez v. Joyce*, No. 25-cv-8250, 2025 U.S. Dist. LEXIS 208578, 2025 WL 2961626, at *4 (S.D.N.Y. Oct. 19, 2025) (habeas petition granted and respondents ordered to immediately release petitioner from custody and certify compliance with a filing the next day); *Benitez v. Francis*, No. 25-cv-5937 (DEH), 2025 U.S. Dist. LEXIS 157214, 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025); *J.U. v. Maldonado*, No. 25-cv-04836 (OEM), 2025 U.S. Dist. LEXIS 191630, 2025 WL 2772765, at *31 (E.D.N.Y. Sept. 29, 2025) ("Respondent is ORDERED to immediately release Petitioner from custody.").

Here, Petitioner has requested "release, a federal bond hearing, or, in the alternative, a bond hearing in immigration court under 1226(a)." ECF No. 1 at 9. Respondents ask the Court to order the same relief it ordered in *Piedrahita-Sanchez*: a bond hearing within 7 days of the Court's order. ECF No. 9 at 4. Accordingly, this Court orders a bond hearing and, in the alternative, immediate release. Again, numerous other courts have fashioned similar relief. *See, e.g., Adonay E.M. v. Noem*, No. 25-cv-3975, 2025 U.S. Dist. LEXIS 222247 at *26 (D. Minn. Nov. 12, 2025) (ordering that Petitioner is subject to detention, if at all, under Section 1226(a); ordering that a bond hearing be held within seven days of the date of the Order

21

or in the alternative that Petitioner must be immediately released from detention).

Accordingly, the Court is ordering a bond hearing, with the alternative option that the government might release Petitioner. Indeed, nothing in the TRO (ECF No. 3) nor in this present Opinion should be construed as preventing the Government from immediately releasing the Petitioner.

### V. Conclusion

For the foregoing reasons, Petitioner's Petition for a Writ of Habeas Corpus, ECF No. 1, is GRANTED in part. Respondent is ORDERED to hold an individualized bond hearing before an Immigration Judge pursuant to 8 U.S.C. § 1226(a) for Petitioner, within seven (7) days. If Respondents cannot hold such a hearing, they shall immediately release Petitioner.

This Court also ORDERS a hearing for January 5, 2025, at 11:00 a.m., at which time it will inquire as to whether a hearing has been held pursuant to Section 1226(a), and/or whether Petitioner has been released.

In addition, this Court ORDERS that Paragraph 3 of its TRO, ECF No. 3, remains in effect. This Court continues to ORDER that Petitioner shall remain detained at the Chittenden Regional Correctional Facility, and shall not be moved out of state, *to the extent that she remains detained at all*. Should Petitioner's detention at the Chittenden Regional Correctional

Facility interfere with holding a bond hearing (for example, if for some reason it is not possible to hold a bond hearing while Petitioner is detained in Vermont), the Government should immediately inform this Court.  In other words, the Court is willing to adjust the restraining order to facilitate such a hearing.  And, again, should the Government release petitioner, that would not violate the TRO.

    Dated at Burlington, in the District of Vermont, this 30th day of December 2025.

                                    /s/ William K. Sessions III
                                    Hon. William K. Sessions III
                                    United States District Court